**LU–AN–DO, INC., Appellant,**

**v.**

**KLOOTS et al., Appellees.**

[Cite as *Lu-An-Do, Inc. v. Kloots* (1999), 131 Ohio App.3d 71.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 1998–CA–00274.

Decided April 19, 1999.

*William H. Georges,* for appellant.

*Walter A. Rodgers* and *Jeffrey Elzeer,* for appellees.

---

EDWARDS, Judge.

Plaintiff-appellant appeals the judgment entry of the Stark County Common Pleas Court granting summary judgment in favor of defendants-appellees W. Fred Kloots, Jr. and Leonard Insurance Agency, Inc.

In June 1993, Terry Todd contacted W. Fred Kloots, Jr., an employee of appellee Leonard Insurance Agency, Inc. to inquire about insurance for a restaurant that Todd was in the process of purchasing from appellant Lu–An–Do, Inc. Under the terms of Todd's purchase agreement with appellant Lu–An–Do, Todd was to maintain insurance in effect at all times to protect Lu–An–Do's financial interest in both the building and the personal property contained therein. Appellant Lu–An–Do retained a mortgage interest in the real property and had perfected a U.C.C. security interest in the personal property. A policy was later underwritten for the restaurant with Cincinnati Insurance Company, effective June 7, 1993. As evidence of coverage, Binder number 3502 was issued.

Neither Don Marino, appellant's sole shareholder, nor appellant's attorney ever contacted either appellee regarding the procurement of insurance. However, after defendant-appellee Kloots, in August of 1993, became aware of the mortgage on the real property held by appellant Lu–An–Do, appellant was listed as a mortgagee on the insurance policy for the real property.[1] Coverage was made effective June 7, 1993, by endorsement dated August 10, 1993. Appellant, as a mortgage holder, received a certificate of insurance but not a copy of the insurance policy itself. While the parties dispute whether or not Todd informed either appellee of appellant's financial interest in the personal property, appellant was not named as loss payee of the policy provisions covering the personal property.

On August 5, 1995, the restaurant was damaged by a fire Todd subsequently pleaded guilty to starting. Cincinnati Insurance Company paid appellant's claim under the property insurance policy for its loss as a mortgagee. Cincinnati, however, refused to allow appellant's claim for personal property because appellant was not listed as a loss payee of the policy provisions covering the same.

On November 20, 1997, appellant filed a complaint in the Stark County Court of Common Pleas against appellees as well as Terry A. Todd and Cincinnati

---

1. At the same time, Stephen Todd, Terry Todd's brother, was added as a second mortgagee on the real property by appellee Kloots.

Insurance Company.[2] Appellant in its complaint, alleged that appellees were negligent in failing to determine appellant's financial interest in the business personal property and to order the proper coverage from Cincinnati, failing to appraise the business personal property and to inquire into appellant's financial interest in the same and failing to update the financial interest information on policy renewals. On January 26, 1998, appellees filed a joint answer.

Appellees filed a motion for summary judgment on September 3, 1998, to which appellant responded by filing a brief in opposition on September 28, 1998. Appellees filed a reply brief on September 29, 1998. Pursuant to a judgment entry filed on September 30, 1998, the trial court granted appellees' motion, finding that appellees owed no duty to appellant. It is from this judgment entry that appellee now appeals, raising the following assignments of error:

I

"The court erred in determining that as a matter of law a negligence action could not be brought by plaintiff–appellant as a certificate holder on a certificate of insurance where it was not a customer of the certificate issuer, defendants/appellees."

II

"The court erred as a matter of law in sustaining defendants–appellees' motion for summary judgment where on the undisputed facts taken most favorably to the non–movant, plaintiff–appellant, the complaint in tort alleges that defendants–appellees negligently supplied false information to an insurance carrier in a business transaction and plaintiff–appellant justifiably relied upon a certificate of insurance issued by defendant–appellee where but for the failure of reasonable care or competence in obtaining and acting upon correct information, plaintiff–appellant would not have sustained loss as a direct and proximate result of the alleged negligence."

■ Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 30 OBR 78, 78–79, 506 N.E.2d 212, 214–215.

Civ.R. 56(C) states:

2. Appellant previously had filed a complaint against Cincinnati Insurance Company in the Stark County Court of Common Pleas (case No. 1996CV01079). Summary judgment was entered in favor of Cincinnati in such case. The summary judgment was affirmed on approval by this court (case No. 97CA0400).

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the nonmoving party has no evidence to prove its case. The moving party must specifically point to some evidence that demonstrates the nonmoving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the nonmoving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, 1170–1171 citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

It is based upon this standard that we review appellant's assignments of error.

Because the assignments of error are closely related to one another, they will be dealt with together.

■ Appellant argues that the trial court erred in finding that appellant, as a certificate holder on a Certificate of Insurance, could not bring a claim for negligence against appellees, the certificate issuer, because the appellant was not a customer of the appellee. This court finds that, as a matter of law, the issuance of a Certificate of Insurance to a certificate holder who is not the customer of the insurance agent issuing the certificate, fails to create a duty from the certificate issuer to the certificate holder.

■ Appellant, in order to maintain a cause of action for negligence against appellees, must establish the following three (3) elements:

(1) that appellees owed a duty to appellant,

(2) that appellees breached that duty, and

(3) damage proximately resulting from the breach. See *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 539 N.E.2d 614; *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 15 OBR 179, 472 N.E.2d 707.

An insurance agency has a duty to exercise good faith and reasonable diligence in providing insurance requested by its customer. *First Catholic Slovak Union v. Buckeye Union Ins. Co.* (1986), 27 Ohio App.3d 169, 27 OBR 202, 499 N.E.2d 1303. An insurance agent, however, owes no duty to ensure that a party is named as an insured on a policy when there was no oral or written agreement to obtain insurance coverage between the party and the agent and when the party never contacted the agent or any other insurance agent about procuring coverage. See *Kungle v. Equitable Gen. Ins. Co.* (1985), 27 Ohio App.3d 203, 27 OBR 242, 500 N.E.2d 343. Likewise, in this matter, appellant had no agreement with either appellee regarding the procurement of insurance coverage. Nor did appellant make a request of either appellee to be named as an insured or as an additional insured under the subject policy. The only conversations regarding insurance coverage took place between appellees and Todd. Moreover, any contract for the provision of insurance was between appellees and Todd (hereinafter the "insured").

Although there is no contractual relationship between appellant and appellees, appellant argues that appellees owe a duty to appellant under a theory of negligent misrepresentation. The Ohio Supreme Court in *Haddon View Invest. Co. v. Coopers & Lybrand* (1982), 70 Ohio St.2d 154, 24 O.O.3d 268, 436 N.E.2d 212, applied Restatement of the Law 2d, Torts (1965), Section 552, in holding that an accountant could be held liable by a third party for professional negligence when that third party is a member of a limited class whose reliance on the accountant's representations is specifically foreseen. The Restatement section states as follows:

"(1) One who, in the course of his business profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance, upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

"(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

"(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

"(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction."

The court in *Haddon* thus rejected a requirement that an innocent third party who foreseeably relies on an accountant's report must be in privity with the accountant before the accountant could be held liable for professional negligence.

In extending the potential liability of professionals to those with whom the professional is not in privity, both *Haddon* and the Restatement of Torts, Section 552 carefully set forth the limits of that extension of liability. Duty (and therefore liability) in *Haddon* is extended to a third party who is a member of a limited class whose reliance on the professional's representation is specifically foreseen. In *Haddon*, the limited partners' reliance on the accountant's certified audits for purposes of their investment strategy was specifically foreseen by the accounting firm being sued by the partners. There is a good argument in the case at bar that the appellant may be a third party who is a member of a limited class of persons to whom the appellees owe a duty because the appellant is in a limited group of persons who have a direct financial interest in the insured property and the appellees may have known of this interest. However, *Haddon* also requires that the third parties' reliance on the professional's (the appellees') representation must be specifically foreseen by the professional. The document that appellant alleges he relied upon (in believing his interests in the contents of the building were protected) is the Certificate of Insurance sent to the appellant by one of the appellees.

We find that as a matter of law the appellant's reliance on the Certificate of Insurance for proof that the appellant's interest in the contents of the building were insured was not specifically foreseen by the appellees. The first reason for this conclusion is found in the warning language found on the Certificate of Insurance. The undisputed fact in the case at bar is that the Certificate of Insurance had the following warning language on it at the top and set off in a box: "THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER." In addition, there is language in the Certificate of Insurance which states "THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES." This language should have warned the appellant that (1) he had no rights just because he had the Certificate of Insurance, and (2) the actual insurance policy would be the document to look at to see if his interests were covered. Further, because of this language, neither of the appellees could have foreseen that the appellant would rely on the Certificate of Insurance for information on the extent of coverage on the appellant's property interest. The

second reason for the conclusion that neither of the appellees could have foreseen appellant's reliance on the Certificate of Insurance for proof that the appellant's interest in the contents in the building was covered was the content of the Certificate of Insurance. The Certificate of Insurance listed the appellant as a mortgagee, not as a lienholder or loss payee. Further, the only property specifically listed as insured on the Certificate of Insurance was the building, *not* the contents. The third reason for the conclusion that neither of the appellees could have foreseen appellant's reliance on the Certificate of Insurance for proof that appellant's interest in the contents of the building was covered is that the insurance policy is the only document that sets forth the specifics of coverage. In *Brown v. Woodmen Acc. & Life Co.* (1992), 84 Ohio App.3d 52, 616 N.E.2d 278, the court held that a party cannot justifiably rely upon an alleged negligent misrepresentation by an insurance agent when the party could have discovered the accuracy or validity of the representation by reviewing the insurance policy.

While it is true that *Brown* dealt with the obligation of an insured to read the policy, this court finds that that obligation should also apply to the appellant in the case at bar. If appellant was relying on the insurance obtained by the insured to cover appellant's interest in the contents of the building, then it was not foreseeable by the appellees that the appellant would rely on the Certificate of Insurance. If it is not foreseeable to an insurance agent that an insured would rely on anything other than the insurance policy itself for proof of coverage, then it is not foreseeable to an insurance agent that a lienholder on the insured property would rely on any document other than the insurance policy for proof that the lienholder's interest were covered. Based on the three-part analysis above, it was not specifically foreseeable to the appellees that the appellant would rely on the Certificate of Insurance for proof that the appellant's interest in the contents of the building would be covered by insurance. Therefore, the *Haddon* case does not help the appellant in this matter because appellant's reliance on the insurance agent's representation made via the Certificate of Insurance was not specifically foreseen by the appellees.

The concept of specific foreseeability is addressed in the case of *Second Natl. Bank of Warren v. Demshar* (1997), 124 Ohio App.3d 645, 707 N.E.2d 30. In that case, a certified public accountant ("CPA") was hired by a company to do a limited report assessing the financial procedures of the company. It was not to be an audit and the CPA was provided with copies of the company's balance sheet and statements of income, retained earnings and cash flow. The CPA issued a report to the company along with a cover letter that stated he had not conducted an audit of the company and his limited review was based only upon financial data provided to him by the management of the company. This report and letter were submitted to a bank when the company was seeking to increase its line of credit.

The CPA admitted that he knew the bank would review the CPA's letter. The bank increased the company's line of credit and the company borrowed $50,000. The company got into financial difficulty and filed for bankruptcy. The bank brought suit against the CPA. The Eleventh District Court of Appeals, in affirming the trial court's granting of summary judgment to the CPA, held that the CPA did not owe the bank a duty of care. The court stated that "[w]hile appellee knew that appellant was a creditor of [the company] and that appellant might review the letter and report after their submission to [the company], this does not establish that appellee specifically foresaw that the bank as a result of such review, would rely on his work product for business purposes, despite the disclaimer." *Id.* at 650, 707 N.E.2d at 33. The situation in *Second Natl. Bank* is very similar to the case at bar. The Certificate of Insurance contained disclaimers and the appellees knew that appellant would review the certificate, because one of the appellees sent it to the appellant. However, it was not specifically foreseen by appellee that the appellant would rely upon the Certificate of Insurance for proof that appellant's interest in the building contents would be covered by insurance and therefore appellant would forebear from obtaining further coverage. The Certificate of Insurance contained "disclaimer" language not unlike the disclaimer language in the letter in *Second Natl. Bank*.

Negligent misrepresentation is set out in a more detailed fashion in Section 552 of the Restatement of Torts than it is in the finding in *Haddon.* However, appellant's arguments fail under an analysis based on the criteria set forth in the Restatement Section 552. First of all, appellant's arguments fail with the foreseeability issue. While appellant may be in a limited group to whom appellees supplied information (Certificate of Insurance), it was not specifically foreseen by the appellees that the appellant would rely on that information for proof that the appellant's interest in the building contents was covered by insurance.

In addition, the Restatement of Torts Section 552 sets forth that the duty on the professional supplying the information is to supply non-false information. False information creates the liability. In the case at bar, false information was not provided to the appellant. The Certificate of Insurance represented that the appellant was a mortgagee and that the building only was covered by insurance. Those representations were all true in that the representations represented the actual insurance coverage. There was no misrepresentation. In other words, there was no false information supplied to the appellant. In the cases cited by the appellant as to this issue, information was presented that did not represent the true situation. In other words, it was false information. In *Haddon, supra,* 70 Ohio St.2d 154, 24 O.O.3d 268, 436 N.E.2d 212, the complaint alleged that there had been misstatements and/or omissions of material facts in an accoun-

tant's representations and the accountant was held liable to the limited partners in a partnership even though the general partner had contracted with the accountant. In *Merrill v. William E. Ward, Ins.* (1993), 87 Ohio App.3d 583, 622 N.E.2d 743, an insurance agent was held liable for negligence to the children of an insured when the insurance agent provided a written communication to the insured indicating that the insured's children were the sole beneficiaries of an insurance policy but they were actually only fifty percent beneficiaries. In *Sindel v. Toledo Edison Co.* (1993), 87 Ohio App.3d 525, 622 N.E.2d 706, customers were permitted to bring an action for negligent misrepresentation against an electric company to recover for an error in projection of electricity needed at a new store location. In *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt., Inc.* (1993), 87 Ohio App.3d 613, 622 N.E.2d 1093, a tenant brought an action for negligent misrepresentation because the landlord induced the tenant to forebear an opportunity to lease space in other buildings. In *Perpetual Fed. S. & L. Assn. v. Porter & Peck, Inc.* (1992), 80 Ohio App.3d 569, 609 N.E.2d 1324, it was found that an appraiser could be held liable to a savings and loan association making a loan for the purchase of property that the appraiser had found to be in conformance with zoning regulations, but was not. In *Bowling Transp., Inc. v. Gregg* (1995), 103 Ohio App.3d 539, 660 N.E.2d 497, a bidder at a real estate auction was permitted to bring an action against the auctioneer for allegedly changing the terms of sale during the auction from the terms that were explained at the auction's start.

Another criterion of negligent misrepresentation, as set forth in Section 552 of the Restatement of Torts, that the case at bar fails to meet, is that of justifiable reliance. The appellant argues that justifiable reliance is a question of fact. See *Lepera v. Fuson* (1992), 83 Ohio App.3d 17, 613 N.E.2d 1060. However, *Lepera* also states that "reliance * * * [is] justified if the representation does not appear unreasonable on its face * * * and if, under the circumstances, [there is] no apparent reason to doubt the veracity of the representation." *Id.* at 26, 613 N.E.2d at 1065. We find that it is not justifiable to rely on a Certificate of Insurance when the face of that representation indicates in warning language that only the policy of insurance can set forth the true coverage.

Appellant argues that (see Assignment of Error II) the appellees should be liable for loss suffered by the appellant because the appellees negligently supplied false information to an insurance carrier in a business transaction and because of that act, the appellant's interest in the contents of the building was not sufficiently covered. But according to the Restatement of Torts Section 552, liability is limited to losses suffered by persons for whose benefit or guidance the information is supplied, or those persons to whom the appellee knows the information will be supplied. Further, appellant must rely upon the information in a transaction

the information was intended to influence or a substantially similar transaction. In the case at bar, the appellant alleges that appellees supplied false information to the insurance carrier. However, the carrier used this information to prepare the policy of insurance, but the appellant used the information to ensure that his interests were covered by insurance. The information presented to the insurance carrier by the appellees may have misrepresented the appellant's actual interest in the contents of the building, but the documents prepared by the carrier as a result of that information, presented to the appellant the actual interests that were covered by insurance. Therefore, the appellant received true, not false information as to his coverage on the contents of the building.

The appellant also argues that appellee Kloots represented to the insured that the appellant's interests were covered and that this false representation, when relied upon, resulted in the damages. However, it is not clear that the insured relayed this false information to the appellant. That step would be necessary under Section 552 of the Restatement of Torts for liability to attach because appellant actually has to have relied on the false information and appellant could not rely on information he knew nothing about. Even if the false information was communicated by the insured to the appellant, liability would not attach under the facts of the case at bar. The reason it would not attach has been set out above in the discussion of what type of communication is justifiable to rely upon to provide proof that a person's interest in property are covered by insurance. As set out in the cases above, the insurance policy itself is the only document upon which a person should rely when determining if a person's interest in property is protected under that insurance policy.

In sum, prior to the *Haddon* case in 1982, generally only a person in privity could recover against a professional for negligence. The court in the *Haddon* case indicated that an accountant may be held liable by a third party for professional negligence when that third party is a member of a limited class whose reliance on the accountant's representation is specifically foreseen. Applying that finding to the case at bar, there would still be no liability to the appellees because it was not specifically foreseen by them that the appellant would rely on the Certificate of Insurance for proof that the appellant's interest in the contents of the building were covered by insurance. Even an analysis of the case at bar under the criteria set out in Section 552 of the Restatement of Torts does not result in liability to the appellees.

For the foregoing reasons, assignments of errors I and II are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

GWIN, P.J., and FARMER, J., concur.