Affirmed and Opinion filed August 25, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00278-CV

___________________

 

WEST HOUSTON
AIRPORT, INC., Appellant/Cross-Appellee

 

V.

 

MILLENNIUM INSurance AGENCY, INC.,
Appellee/Cross-Appellant



 



 

On
Appeal from the 151st District Court

Harris County,
Texas



Trial Court Cause No. 2002-27582B

 



 

 

OPINION

            Appellant,
West Houston Airport, Inc. (“WHA”), contends the trial court erred by granting
appellee’s, Millennium Insurance Agency, Inc. (“Millennium”), motion for
summary judgment.  In a cross-appeal, Millennium contends the trial court erred
by refusing to hold an evidentiary hearing on Millennium’s counterclaim for
sanctions against WHA.  We affirm.  

I.   Background

            In June 1997,
Pelican Importing & Export, Inc. d/b/a Interfert (“Interfert”) leased an
airport hangar to Volume Millwork, Inc. (“VMI”) for a term of five years.  VMI
manufactured commercial cabinetry.  Under the lease, VMI was required to obtain
$1,000,000 per occurrence in general-liability coverage on the hangar “covering
Tenant’s activities in the Premises,” and name the landlord as an additional
insured under the policy.    

In November 2001, Interfert sold the hangar to the
Woodrow V. Lesikar Family Trust (“the Trust”), which assigned the lease to
WHA.  According to WHA, shortly after the hangar was sold to the Trust, VMI
breached the lease.  WHA and the Trust obtained an eviction order from the
justice court; VMI appealed this order for de novo review by the county court. 
In August 2003, a judgment was signed in which the county court (1) concluded
the lease expired by its own terms on July 1, 2002, (2) recognized WHA was
awarded sole possession of the hangar on November 14, 2002, and (3) determined
VMI was a holdover tenant during this four-month period.  In October 2002,
during the period when VMI was a holdover tenant, the hangar was damaged in a
fire allegedly caused by a large oven used by VMI.  

Additional litigation ensued between WHA and VMI,
including WHA’s claim that VMI was responsible for damages caused by the fire. 
According to WHA, during his deposition, VMI president Billy Shiver identified
Millennium, “through its agent and employee Roger Beathard,” as “the insurance
agency [that] obtained insurance coverage for VMI.”[1]  Shiver testified
he provided a copy of the lease to Beathard and requested that Beathard obtain
whatever coverage was required under the lease.

On December 8, 2005, WHA sued Millennium, alleging
“professional negligence” for failing to obtain the required amount of
insurance coverage.  Specifically, WHA alleged Millennium procured a policy
that included a $50,000 limitation for damage caused by fire—far less than the
lease-specified requirement of $1,000,000 in general-liability coverage.  WHA
contends that to the extent its damages “are not covered by an applicable
policy of insurance as required by the lease, [its] uninsured loss, if any, was
proximately caused by the professional negligence of the agents and employees
of [Millennium.]”  WHA presented evidence that (1) Shiver requested Beathard to
procure whatever coverage was required under the lease, (2) Beathard informed
Shiver that the policy complied with the lease requirements, but (3) the policy
included a $50,000 limitation of liability for damages caused by fire.  Thus,
the parties apparently do not dispute the fact that the comprehensive
general-liability feature of the policy provided $1,000,000 coverage; it is the
$50,000 limitation for damage caused by fire that precipitated this dispute.

Millennium filed a motion for summary judgment in which it argued, among
other grounds, that it owed no duty to WHA and WHA’s claim is barred by
limitations.  In August 2008, the trial court disposed of WHA’s claim by
granting Millennium’s motion for summary judgment without specifying grounds. 
Subsequently, WHA filed a motion for reconsideration, which the trial court denied.[2]  In January 2010,
WHA filed a motion for summary judgment requesting that the trial court deny
Millennium’s counterclaim for sanctions.  The trial court granted WHA’s motion
on February 26, 2010. 

II.   Summary Judgment

            In five issues,
WHA contends the trial court erred by granting Millennium’s motion for summary
judgment.

A.   Standard
of review

We review summary judgments de
novo.  Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex.
2005).  The party moving for a traditional summary judgment
bears the burden to show the absence of an issue of material fact pertaining to
one or more elements of the non-movant’s cause of action.  Tex. R. Civ. P.
166a(c); Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 157 (Tex.
2004).  If the movant establishes its right to summary judgment, the burden
shifts to the non-movant to raise a genuine issue of material fact.  See
Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).  In reviewing the trial court’s decision to grant
summary judgment, we indulge every reasonable inference from the evidence in
favor of the non-movant, resolve any doubts arising from the evidence in its
favor, and take as true all evidence favorable to it.  Joe, 145 S.W.3d
at 157.

B.   Millennium’s duty to WHA

In its fourth issue, WHA contends the trial court
erred by granting summary judgment based on Millennium’s contention that it did
not owe a duty of care to WHA.  WHA alleges that Millennium committed acts
amounting to professional negligence by failing to comply with VMI’s request
for liability coverage required under the lease. 
Millennium contends it did not owe a duty to WHA because there was no
agent-client relationship between Millennium and WHA.

Texas courts have generally recognized that an insurance broker owes the
following common-law duties to a client for whom the broker undertakes to
procure insurance: (1) to use reasonable diligence in
attempting to place the requested insurance;
and (2) to inform the client promptly if unable to do so.  May
v. United Servs. Ass’n of Am., 844 S.W.2d 666, 669 (Tex. 1992); Sonic
Sys. Int’l, Inc. v. Croix, 278 S.W.3d 377, 389 (Tex. App.—Houston
[14th Dist.] 2008, pet. denied).  However, the parties have not cited, nor have we found, any
Texas cases interposing duties, if any, an insurance broker might owe to a
non-client when the broker’s client requests procurement of a general-liability
policy with a certificate designating the non-client as an additional insured.

Generally, one who has sustained damages because of professional negligence may not proceed against the
professional unless there is privity of contract.  See Ervin v. Mann
Frankfort Stein & Lipp CPAs, L.L.P., 234 S.W.3d 172,
182 (Tex. App.—San Antonio 2007, no pet.) (pertaining to accountant-client
relationship); Hartman
v. Urban, 946 S.W.2d
546, 548–50 (Tex. App.—Corpus Christi 1997, no writ) (pertaining to
engineer-client relationship); Wright
v. Gundersen, 956 S.W.2d 43,
48 (Tex. App.—Houston [14th Dist.] 1996, no writ) (pertaining to
attorney-client relationship).    Privity for purposes of professional
negligence is the contractual connection or relationship existing between two
or more parties; the relationship can be formed by express or implied
contract.  Ervin, 234 S.W.3d at 182.  Several courts in other
jurisdictions have concluded that an insurance broker does not owe a duty
unless there is privity.  See, e.g., Seal v. Hart, 2002 MT
149, ¶¶ 28–38, 310 Mont. 307, 50 P.3d 522; Benjamin Shapiro Realty Co., LLC.
v. Kemper Nat’l Ins. Co., 756 N.Y.S.2d 45, 46 (N.Y. App. Div.
2003); Lu-An-Do, Inc. v. Kloots, (1999), 131 Ohio App. 3d 71, 76, 721
N.E.2d 507, 510; Workman v. McNeal Agency, Inc., 458 S.E.2d 707,
709 (Ga. App. 1995).  But see, e.g., Carter Lincoln-Mercury,
Inc., Leasing Div. v. EMAR Group, Inc., 135 N.J. 182, 202, 638 A.2d
1288, 1297–98 (1994) (explaining broker may be liable, not only to those
with whom he has privity, but to others “found within the zone of harm
emanating from the broker’s actions”); Hamer v. Kahn, 404 So.2d 847,
849–50 (Fla. 4th DCA 1981).

In its petition, WHA alleged as the sole basis for
Millennium’s negligence that Beathard did not obtain the correct amount of
coverage after VMI instructed him to procure coverage required under the lease
with a certificate naming the landlord as an additional insured.  Millennium
attached WHA’s answers to interrogatories in which WHA acknowledged the basis
of its claim was VMI’s instruction to Beathard to procure insurance required
under the lease.  Further, WHA admitted it had no “conversations” with
Millennium or Beathard regarding insurance coverage.  In its response, WHA
presented evidence that VMI informed Beathard when the hangar was sold to a new
party; however WHA did not present evidence raising a fact issue regarding
communications between WHA and Millennium.  We conclude the summary-judgment
evidence conclusively established that Millennium and WHA did not enter into
any express or implied contract regarding insurance coverage.  Thus, there was
no contractual privity between Millennium and WHA.  See Black’s Law
Dictionary (9th ed. 2009) (“privity of contract[:] The relationship between the
parties to a contract, allowing them to sue each other but preventing a third
party from doing so.”); see also Ervin, 234 S.W.3d at 182–83 (explaining
implied contract requires “a meeting of the minds”).  

Nevertheless, WHA argues
that Millennium had a duty because it agreed to procure the insurance policy
required under the lease, in which the landlord (subsequently, WHA as assignee)
would be named as an additional insured.  However, WHA’s status as an
additional insured is not relevant.  In its petition, WHA alleged it had filed
suit against VMI to recover damages caused to the hangar.  WHA seeks damages
from Millennium to the extent WHA recovers an amount from VMI that exceeds the
liability insurance coverage procured by Millennium.  In this posture, WHA is
not asserting its status as an additional insured under the policy; instead,
WHA is a third-party claimant against VMI, and VMI would be indemnified under
the liability coverage in the policy should WHA prevail.  In other words, WHA
is in the same position as any third-party injured by VMI’s activities at the
hangar.[3] 
Thus, WHA’s status as an additional insured does not advance its duty
argument.  

We also recognize that
the relationship between VMI and Millennium is separate and distinct from the
relationship between VMI and WHA.  Although Millennium undertook a duty to
obtain insurance requested by VMI, VMI had a contractual obligation to obtain
insurance required by the landlord, and we decline to shift VMI’s
responsibilities to Millennium.  See Tex. Home Manag., Inc. v.
Peavy, 89 S.W.3d 30, 33–34 (Tex. 2002) (recognizing that the consequences
of imposing a burden on the actor is a factor to consider when determining
whether the actor had a legal duty).  The
underlying lease was between VMI and the landlord, and it was ultimately VMI’s
burden to procure liability coverage required under the lease.  Hypothetically,
if VMI requested coverage required under the lease, then instructed
Millennium not to include the landlord as an additional insured, in the absence
of privity between Millennium and the landlord, Millennium would certainly not
be a cognizable professional-liability defendant for failing to protect the
landlord’s interests, despite the requirement in the lease that the landlord
was to be named as an additional insured.  

We acknowledge that
foreseeability of harm is the principal factor to consider when determining
whether a party owes a duty.  See City of Waco v. Kirwan,
298 S.W.3d 618, 624 (Tex. 2009) (citation omitted).  We analyze foreseeability
by determining whether the defendant, “as a person of ordinary intelligence,
should have anticipated the dangers that his negligent act created for
others.”  Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 549–50 (Tex.
1985).  This determination is gleaned from a two-prong test: (1) the injury
must be of such a general character as might reasonably have been anticipated;
and (2) the injured party should be so situated relative to the wrongful act
that injury to him or one similarly situated might reasonably have been
foreseen.  Mellon Mortg. Co. v. Holder, 5 S.W.3d 654, 655 (Tex. 1999); Nixon,
690 S.W.2d at 551.

Under the lease, VMI was
required to obtain a policy in which the landlord was named as an additional
insured with a cross-liability endorsement.  A cross-liability endorsement
provides liability coverage when an additional insured sues the named insured
for negligence even though they are both covered by the same policy.  See Rod
D. Margo, Aspects of Insurance in Aviation Finance, 62 J. Air L. &
Com. 423, 457 (1996) (“A cross-liability clause is a provision in a liability
policy under which it is agreed that the inclusion of more than one insured in
the policy will not preclude the right of the original insured to recover for
claims made against the original insured by additional insureds or their
employees.”).  Therefore, parties to the lease
contemplated VMI would obtain $1,000,000 in liability coverage that would
benefit the landlord by providing indemnification for VMI if the hangar were
damaged because of VMI’s negligence.  

However, considering all the possibilities for events that
might trigger VMI’s liability for damage to the hangar, it was not reasonably
foreseeable to Millennium that a limitation of coverage under the general-liability
policy for one specific type of causation would harm the landlord.  Foreseeability
of injury under these facts is significantly attenuated, if not remote.  See
Lear Siegler,
Inc. v. Perez, 819
S.W.2d 470, 472 (Tex. 1991) (“[T]here are certain situations in which the
happenstance of place and time is too attenuated from the defendant’s conduct
for liability to be imposed.”).  Furthermore, it is axiomatic that coverage under a comprehensive
general-liability policy will be subject to exclusions and limitations, and in
the absence of a special relationship, an insurance broker does not have a duty
to disclose limitations to its client unless inclusion of the limitation
renders the policy non-compliant with the coverage requested by the client.  See
Choucron v. Sol L. Wisenberg Ins. Agency-Life & Health Div., Inc., No.
01-03-00637-CV, 2004 WL 2823147, at *6 (Tex. App.—Houston [1st Dist.] Dec. 9,
2004, no pet.) (mem. op.); Moore v. Whitney-Vaky Ins. Agency, 966 S.W.2d
690, 692 (Tex. App.—San Antonio 1998, no pet.); see also May, 844 S.W.2d at 669–70 & n.10.[4]

Nevertheless, even if it were foreseeable that
the policy limitation would harm the landlord, foreseeability alone is not sufficient to justify
imposition of a duty.  Kirwan, 298 S.W.3d 618, 624 (citation omitted). 
As previously discussed, the nature of the relationship between the plaintiff
and defendant is a significant consideration in determining the existence of a
duty of care.  Peavy, 89 S.W.3d at 34.  Considering the relationship
between the parties in this case, we hold Millennium does not owe a
professional duty to WHA, a third-party with whom Millennium never communicated
regarding insurance coverage.  See Hartman, 946 S.W.2d at 550
(holding engineer who prepared erroneous plat did not owe duty to subsequent
purchaser because of lack of privity, even though it was foreseeable purchaser
would rely on plat).  In
sum, an insurance broker
has limited duties under the common law, and the facts of this case do not
support WHA’s request that we broaden those duties.  See May, 844 S.W.2d
at 669 (broker has duty to client to use reasonable diligence in attempting to
place the requested insurance and to inform the client promptly if unable to do
so); Choucron, 2004 WL 2823147, at *6
(generally, broker has no duty to disclose to client policy coverage
limitations); Critchfield
v. Smith, 151 S.W.3d
225, 230 (Tex. App.—Tyler 2004, pet. denied) (generally, broker has no
duty “to extend the insurance protection of his customer merely because the
agent has knowledge of the need for additional insurance of that customer”).  

Accordingly, we hold Millennium did not owe a duty of
professional care to WHA relative to the amount of liability insurance coverage
available to indemnify VMI under the lease.[5] 
WHA’s fourth issue is overruled.  Because we have affirmed one of the grounds
upon which summary judgment was granted, we need not address WHA’s remaining
issues.  See Critical Health Connection, Inc. v. Tex. Workforce Comm’n, 338
S.W.3d 758, 768 n.9 (Tex. App.—Austin 2011, no pet.) (declining to
consider ground presented in motion for summary judgment after affirming
summary judgment on a separate ground). 

III.   Millennium’s Counterclaim for Sanctions

In its cross-appeal, Millennium contends the trial
court erred by granting summary judgment in favor of WHA relative to Millennium’s
counterclaim for sanctions.  Specifically, Millennium argues the trial court erred
by failing to conduct an evidentiary hearing on the counterclaim.

A trial court must hold an evidentiary hearing on a party’s request for
sanctions to make the necessary factual determinations.  R.M. Dudley Const.
Co., Inc. v. Dawson, 258 S.W.3d 694, 709 (Tex. App.—Waco 2008,
pet. denied).  However, when a party does not object to the trial court’s
failure to conduct an evidentiary hearing, error is waived.  See D Design
Holdings, L.P. v. MMP Corp., 339 S.W.3d 195, 203 (Tex.
App.—Dallas 2011, no pet.); Dugas v. Dreyer, No. 14-96-00336-CV,
2004 WL 438598, at *3 (Tex. App.—Houston [14th Dist.] Mar. 11, 2004, no
pet.) (mem. op.).

WHA filed a motion for summary judgment in which it argued Millennium’s
request for sanctions should be denied as a matter of law.  WHA set its motion
for a hearing.  Millennium filed a response in which it argued the merits of
its request for sanctions; however, Millennium neither requested an evidentiary
hearing nor complained that its request for sanctions was to be considered in a
non-evidentiary summary-judgment hearing.  By failing to object to the lack of
an evidentiary hearing, Millennium waived any error the trial court committed
by failing to hold such hearing.  See D Design Holdings, L.P., 339
S.W.3d at 204; Dugas, 2004 WL 438598, at *3.  Accordingly, Millennium’s
cross-appeal issue is overruled.

We affirm the trial court’s judgment.

                                                                                                                                                                                                           

                                                                       

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

 

Panel consists of Justices
Anderson, Seymore, and McCally.









[1] We recognize that
Millennium contends it is not liable for Beathard’s negligence because Beathard
was an independent contractor.  However, for purposes of our opinion, we assume
Millennium was responsible for procuring insurance as requested by VMI. 





[2] In its order denying
reconsideration, the trial court explained that the summary judgment was granted
because WHA’s claims are barred by the statute of limitations.  The court further
noted it did not consider whether Millennium owed a duty to WHA.  Hence,
the trial court arguably limited the ground upon which it granted summary
judgment to the affirmative defense of limitations.  Nevertheless, we still may
affirm the judgment on other grounds raised in Millennium’s motion for summary
judgment.  See Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d
623, 625 (Tex. 1996); In re TCW Global Project Fund II, Ltd., 274
S.W.3d 166, 170 (Tex. App.—Houston [14th Dist.] 2008, no pet.).





[3] In
Texas, a third-party does not have a direct action under a contractual or
extra-contractual theory of recovery against the tortfeasor’s liability
insurance carrier.  See Jones v. CGU Ins. Co., 78 S.W.3d
626, 629 (Tex. App.—Austin 2002, no pet.).  Part of
the reason for this rule is that the tortfeasor’s interests are adverse to
those of the third-party, and if the carrier owed a duty to the third-party,
the carrier’s duties to the tortfeasor would necessarily be compromised.  Transp.
Ins. Co. v. Faircloth, 898 S.W.2d 269, 279–80 (Tex. 1995).  Analogously, an
insurance broker who procures liability insurance for a tenant pursuant to a
lease would not have a duty of professional care to the landlord whose
interests may be adverse to the broker’s client.





[4] Absent privity of
contract, there was no “special relationship” between Millennium and WHA.   





[5] Our holding is limited to
situations in which the third-party sues the broker for its alleged
professional negligence in procuring requested coverage; we have not addressed
situations in which the third-party accuses the broker of negligent
misrepresentation.  See Ervin, 234 S.W.3d at 176 (“A negligent
misrepresentation claim is not the equivalent of a professional malpractice or
negligence claim.”).